B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>WEBSTER BANK, NATIONAL ASSOCIATION | DEFENDANTS<br>PHILIP H. FRIEND |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Murtha Cullina LLP<br>CityPlace I, 185 Asylum Street<br>Hartford, CT 06103 | ATTORNEYS (If Known)<br>David C. Pite<br>Pite Law Office LLC<br>41 Trumbull Street, 2nd Floor<br>New Haven, CT 06510 |
| PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to determine dischargeability of debt pursuant to 11 U.S.C. 523.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 88,158.66 |
| Other Relief Sought | |

American LegalNet, Inc.
www.FormsWorkflow.com

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Phililp H. Friend | | BANKRUPTCY CASE NO.<br>09-50037 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Bridgeport | | DIVISION OFFICE | NAME OF JUDGE<br>Alan H.W. Shiff |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ signature* | | | |
| DATE<br>April 10, 2009 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Robert E. Kaelin | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

American LegalNet, Inc.
www.FormsWorkflow.com

Document    Page 3 of 19

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re | CHAPTER 7 |
| PHILIP H. FRIEND, | CASE NO. 08-50037 |
| Debtor. | |
| WEBSTER BANK, NATIONAL ASSOCIATION, | ADV. PRO. NO. \_\_\_\_\_ |
| Plaintiff, | |
| v. | |
| PHILIP H. FRIEND, | |
| Defendant. | |

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY
OF DEBT TO WEBSTER BANK, NATIONAL ASSOCIATION**

Plaintiff Webster Bank, National Association ("Webster Bank"), by and through its attorneys, by way of its Complaint, and pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6), objects to the dischargeability of the debt owed to Webster Bank by the defendant, Philip H. Friend ("Friend"), and alleges as follows:

PARTIES

1. Plaintiff Webster Bank is a national banking association with a principal place of business at 145 Bank Street, Waterbury, Connecticut. Webster Bank is a creditor in the above-captioned bankruptcy.

2. Defendant Friend is a natural person residing at 222 Peaceable Street, Ridgefield, Connecticut. Friend is the debtor in the above-captioned Chapter 7 bankruptcy case.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 157(a), (b) and § 1334(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6. This proceeding is brought by Webster Bank pursuant to 11 U.S.C. § 523 to deny the dischargeability of certain debts owed to Webster Bank by Friend.

## BACKGROUND

7. On or about January 14, 2004, Ridgefield Farms, LLC ("Ridgefield Farms"), a Connecticut limited liability company with a principal place of business located at 222 Peaceable Street, Ridgefield, Connecticut entered into an Unsecured Business Line of Credit Agreement ("Line of Credit") in favor of Webster Bank in the original principal amount of $50,000.00, with interest, payable as provided therein.

8. The debtor, Friend, and Peter Alpert ("Alpert") executed the Line of Credit as the President and Executive Vice President of Ridgefield Farms, respectively.

9. On or about January 14, 2004, Friend and Alpert executed a Guaranty Agreement whereby Friend and Alpert agreed to personally guaranty payment of the Line of Credit.

2

10. On or about April 8, 2004, the Line of Credit was amended and restated, increasing the principal amount to $100,000.00.

11. On or about April 8, 2004, Friend and Alpert re-executed the Guaranty Agreement agreeing to personally guaranty the amended and restated Line of Credit.

12. The principal and interest due on the Line of Credit as of September 25, 2006 was not paid and, in light of the failure to pay, Webster Bank, as the owner and holder of the Line of Credit and Guaranty Agreement, exercised its option to accelerate the entire indebtedness with accrued interest, and the debt became entirely due and payable.

13. Notwithstanding acceleration and demand, Ridgefield Farms, Friend and/or Alpert failed, neglected and/or refused to pay amounts due to Webster Bank, which action/omission constituted an event of default under the Line of Credit and Guaranty Agreement.

14. Therefore, on or about March 8, 2007, Webster Bank commenced an ex-parte prejudgment remedy action against Ridgefield Farms, Friend and Alpert in the Superior Court Judicial District of Danbury (Docket No. PJR-DBD-CV-07-5002320S) to collect sums due under the Line of Credit and accompanying Guaranty Agreement, as amended (the "State Court Action"), which was granted.

15. Pursuant to the Order of Prejudgment Remedy, Webster Bank attached real property located at 222 Peaceable Street, Ridgefield, Connecticut, owned by Friend and his wife, Jamie Friend (the "Property").

16. Webster Bank's attachment on the Property rendered the debt due under the Line of Credit and accompanying Guaranty Agreement, as amended, in the approximate amount of $105,000.00 fully secured.

17. Alpert provided sufficient financial information demonstrating his limited resources, and therefore, on or about June 28, 2007, Webster Bank agreed to enter into a Stipulated Judgment with Alpert for the full amount then due and owing to Webster Bank of $114,473.34 in order to prevent the continued accrual of interest and fees under the Line of Credit against him.

18. Subsequently, the parties commenced settlement negotiations, and in so doing, Webster Bank relied upon Friend's representations as to his ability to pay the debt due, including a Personal Financial Statement executed by Friend and dated August 6, 2007.

19. In the Personal Financial Statement, Friend represented that the Property was valued at $1,160,000.00 and was encumbered by three mortgages totaling $895,000.00.

20. In the Personal Financial Statement, Friend represented that he earned a total income of $193,600.00 per year.

21. Therefore, on or about October 29, 2007, Webster Bank entered into a Forbearance Agreement with Ridgefield Farms, Friend and Alpert, whereby Webster Bank agreed to forbear from prosecuting the State Court Action in exchange for payment of the debt due in the then amount of $116,317.33 (the "Forbearance Debt") on or before November 16, 2007. (A true and accurate copy of the Forbearance Agreement is attached hereto as <u>Exhibit A</u>).

4

22. Pursuant to the Forbearance Agreement, any of the defendants, Ridgefield Farms, Friend and/or Alpert, were authorized to satisfy the debt owed to Webster Bank via wire transfer or certified check made payable to Webster Bank.

23. Significantly, pursuant to the Forbearance Agreement, upon receipt of payment in full, Webster Bank agreed to release its attachment on the Property and withdraw the State Court Action.

24. The Forbearance Agreement provided for termination upon the default or breach of the terms of payment as outlined therein.

25. On or about November 7, 2007, Webster Bank received three (3) checks in the total amount of $26,830.32 purportedly from Friend; however, the checks were made payable to Ridgefield Farms by The Standard Beef Company ("Standard Beef"), a Connecticut limited liability company with a principal place of business at 216 Food Terminal, New Haven, Connecticut.

26. Standard Beef was not a party to the Action, Line of Credit, Guaranty Agreement or Forbearance Agreement.

27. Having no ability to negotiate these checks, Webster Bank returned the checks to Friend.

28. On or about November 15, 2007, Webster Bank received a check in the amount of $28,158.67 made payable to Webster Bank from Alpert, which he had previously demonstrated was the most he could contribute. Hence, it was understood and agreed to by

5

Webster Bank, Alpert and Friend that Friend would be responsible for the balance of the Forbearance Debt.

29. Thereafter, between November 11, 2007 and November 16, 2007, three (3) checks totaling $88,158.66 issued by Standard Beef and made payable to Webster Bank were delivered to a Webster Bank branch office, purportedly by Friend or someone on his behalf.

30. Upon receipt of the $88,158.66, in accordance with the Forbearance Agreement, Webster Bank released its attachment on the Property and filed a Withdrawal of the State Court Action.

31. On or about February 6, 2008, Standard Beef commenced the filing of a bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 08-30377).

32. Subsequently, Standard Beef's bankruptcy counsel made demand upon Webster Bank for the return of the $88,158.66, stating that the funds had been paid to Webster Bank over unauthorized signatures and constituted fraudulent transfers.

33. Now discovering that the $88,158.66 did not come directly from Friend and that Friend was not authorized to utilize Standard Beef funds to pay his portion of the Forbearance Debt, on or about June 17, 2008, Webster Bank commenced a second ex parte prejudgment remedy action in the Superior Court Judicial District of Danbury (Docket No. DBD-CV-08-5005035S) against Ridgefield Farms, Friend and Alpert in order to secure the sum of $88,156.66, and once again attached the Property ("Second State Court Action").

6

34. In or about November 2008, Webster Bank entered into a Settlement Agreement with Standard Beef, in which Standard Beef represented and confirmed that the checks Webster Bank received were paid to Webster Bank over unauthorized signatures and that Friend had no authority to pay Webster Bank with Standard Beef funds. Pursuant to the Settlement Agreement, Webster Bank was to deliver a check in the amount of $88,156.66 to Standard Beef in exchange for the assignment of any and all claims held by Standard Beef against Ridgefield Farms, Friend and Alpert, and a release of all claims against Webster Bank.

35. On November 13, 2008, the Bankruptcy Court approved the Settlement Agreement and Webster Bank returned the $88,156.66 to Standard Beef.

36. Subsequently, Friend was arrested and charged with larceny and forgery in connection with an alleged embezzlement of funds from Standard Beef.

37. On or about January 12, 2009, Friend commenced the filing of a bankruptcy petition pursuant to Chapter 7 of Title 11 of the United States Code (the "Petition Date").

38. According to Friend's Schedule A, he now lists the value of the Property as only $875,000.00, despite the fact he had the Property on the market for $1,299,000 within approximately a month before his bankruptcy filing and the Property was previously appraised at $1,160,000.

39. Friend listed Webster Bank as a disputed creditor on his Schedule D with a claim in the amount of $90,000.00 and as a disputed creditor in his Amended Schedule F.

40. In his Chapter 7 Individual Debtor's Statement of Intention, Friend stated that he intends to retain the Property and avoid Webster Bank's lien using 11 U.S.C. § 522(f).

7

## COUNT ONE 11 U.S.C. § 523(a)(2)(A)

41. Webster Bank realleges all of the foregoing allegations as if fully set forth herein.

42. As set forth above, Friend induced Webster Bank to enter into the Forbearance Agreement based upon his representations and financial disclosures indicating an ability to pay his portion of the Forbearance Debt.

43. Friend knew or should have known that his financial disclosures were material to Webster Bank's decision to enter into the Forbearance Agreement and that Webster Bank would rely upon his assertions as to the amount of equity in the Property and his ability to pay his portion of the Forbearance Debt.

44. However, Friend entered into the Forbearance Agreement knowing that he either did not have the ability to pay from his own personal funds or that he did not intend to pay Webster Bank, as required therein directly, but would use Standard Beef funds to pay the Forbearance Debt.

45. Friend never disclosed to Webster Bank his intention to pay the Forbearance Debt with Standard Beef funds.

46. As Friend was not authorized to use Standard Beef checks to pay the Forbearance Debt, his representations under the Forbearance Agreement were false and made with the intent of deceiving Webster Bank.

47. Webster Bank reasonably relied on Friend's representations and financial disclosures in entering the Forbearance Agreement and in releasing its fully secured lien on the Property.

48. Due to Friend's fraud in entering into the Forbearance Agreement and his default thereunder, Webster Bank has been forced to return the $88,158.66 payment and commence the Second State Court Action to attach the Property, which Friend now seeks to avoid in his bankruptcy.

49. In addition, Webster Bank has incurred expenses in pursuing remedies under the Forbearance Agreement, including costs and attorneys' fees. Webster Bank will continue to incur such expenses.

50. By reason of the foregoing, the aforementioned debt to Webster Bank is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT TWO 11 U.S.C. § 523(a)(6)

51. Webster Bank realleges all of the foregoing allegations as if fully set forth herein.

52. Friend deliberately and intentionally obtained Webster Bank's consent to enter into the Forbearance Agreement and to release its lien on the Property knowing that he either did not have the ability to pay the Forbearance Debt from his own personal funds or that he did not intend to pay Webster Bank as required thereunder.

53. Friend deliberately and intentionally paid the Forbearance Debt using checks issued by Standard Beef, knowing he did not have the authority to do so and that harm was certain to result to Webster Bank from his actions.

54. Friend's deliberate and intentional acts constitute willful and malicious conduct under Section 523(a)(6).

55. Due to Friend's fraud in entering into the Forbearance Agreement and his default thereunder, Webster Bank has been forced to return the $88,158.66 payment and commence the Second State Court Action to attach the Property, which Friend now seeks to avoid in his bankruptcy.

56. In addition, Webster Bank has incurred expenses in pursuing remedies under the Forbearance Agreement, including costs and attorneys' fees. Webster Bank will continue to incur such expenses.

57. By reason of the foregoing, the aforementioned debt to Webster Bank is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Webster Bank respectfully requests that this Court:

(a) enter judgment against Friend as to the First Count and conclude that Friend's debt to Webster Bank plus all post-petition accrued interest, attorneys' fees and costs is nondischargeable pursuant to 11 U.S.C.§ 523(a)(2)(A);

(b) enter judgment against Friend as to the Second Count and conclude that Friend's debt to Webster Bank plus all post-petition accrued interest, attorneys' fees and costs is nondischargeable pursuant to 11 U.S.C.§ 523(a)(6); and

 (c) award and grant such other relief as this court deems just and equitable.

Dated at Hartford, Connecticut this 10th day of April 2009.

    PLAINTIFF – WEBSTER BANK, N.A.

    By /s/ Robert E. Kaelin
     Robert E. Kaelin – ct11631
     rkaelin@murthalaw.com
     Meredith C. Burns – ct27544
     mcburns@murthalaw.com

    Murtha Cullina LLP
    CityPlace I-185 Asylum Street
    Hartford, CT  06103
    Telephone:  (860) 240-6000
    Facsimile:   (860) 240-6150
    Its Attorneys

# EXHIBIT A

Case 09-50037    Doc 29    Filed 04/10/09    Entered 04/10/09 14:50:35    Desc Main
Document      Page 14 of 19

## FORBEARANCE AGREEMENT

This Forbearance Agreement is entered into as of this __ day of October, 2007, by and between **Webster Bank, National Association** ("Webster Bank"), with a principal place of business at 145 Bank Street, Waterbury, Connecticut, **Ridgefield Farms, LLC**, with a place of business at 25 Prospect Street, Ridgefield, Connecticut; **Phillip Friend,** of 222 Peaceable Street, Ridgefield, Connecticut; and **Peter Alpert,** of 111 Carmalt Road, Hamden, Connecticut (Ridgefield Farms, LLC, Phillip Friend and Peter Alpert are collectively referred to as "Defendants") (Webster Bank, Ridgefield Farms, LLC, Phillip Friend and Peter Alpert are collectively referred to as the "Parties").

WHEREAS, by Complaint dated March 8, 2007, Webster Bank commenced a collection action against the Defendants which action is currently pending in the Connecticut Superior Court, Judicial District of Danbury, Docket No. PJR DBD CV 07-5002320S ("Action");

WHEREAS, the Defendants have tried, and continue to try, to obtain money from other sources to pay Webster Bank the money that the Defendants owe Webster Bank;

WHEREAS, the Defendants have asked Webster Bank to forbear from prosecuting the Action until after November 16, 2007 to allow the Defendants time to obtain money from other sources to pay Webster Bank the money that the Defendants owe Webster Bank;

WHEREAS, the Parties wish to attempt to resolve the Action before incurring any additional costs and/or expenses relating to a trial and on the terms set forth herein, and the Parties expressly rely on each of those terms in entering into this Forbearance Agreement;

NOW, THEREFORE, in consideration of and reliance upon the mutual covenants and agreements set forth herein, the Parties agree as follows:

1. **Recitals:** The Parties stipulate and agree that the foregoing Recitals are true and correct and the Recitals are hereby incorporated by reference into the terms of this Agreement

2. **Debt:** Defendants agree that as of the October 15, 2007, they owe Webster Bank a total of One Hundred and Sixteen Thousand Three Hundred and Seventeen and 33/100 ($116,317.33) Dollars (the "Debt"), and that the Debt consists of the following:

| | |
|---|---|
| Principal: | $ 98,201.27 |
| Interest to 10/15/07: | $ 14,670.56 |
| Waiver of Interest | $ <3,500.00> |
| Late Fees: | $ 1,937.45 |
| Waiver of Late Fees | $ <1,937.45> |
| Unreimbursed attorneys' fees/costs to date: | $ 6,008.00 |
| Costs | $ 737.50 |
| Annual Fee | $ 100.00 |
| Waiver of Annual Fee | $ <100.00> |
| Appraisal Fee | $ 200.00 |
| **Debt** | **$ 116,317.33** |

3. **Payment:** In exchange for Webster Bank's agreement to forbear from prosecuting the Action against the Defendants until after November 16, 2007, the Defendants agree to provide payment, in full of the aforementioned debt, on or before November 16, 2007 to Webster Bank via wire transfer as outlined on the attached wire transfer form.

4. **Payment Form and Address:** Any of the Defendants – Ridgefield Farms, LLC, Phillip Friend and/or Peter Alpert – may satisfy the Debt owed to Webster Bank. Payment is preferred via wire transfer, however, any check must be in certified funds and shall be made payable to "Webster Bank, N.A." There shall be no grace period, and any and all payments required hereunder shall be delivered in good funds to Webster Bank to the following address on or before the scheduled due date:

Ms. Ruth Cortez, Vice President
Special Assets Department
Webster Bank, N.A.
344 Main Street
Mail Stop KN210
Kensington, Connecticut 06037

5. **Forbearance:** In exchange for the Defendants' agreement to make payment as outlined herein, Webster Bank agrees that it will forbear from prosecuting the Action until after November 16, 2007 and no further attorneys' fees and/or costs shall be incurred prior to November 16, 2007. Further, upon payment in full, Webster Bank shall release the attachment on certain real property known as 222 Peaceable Street, Ridgefield, CT and shall also withdraw the action captioned Webster Bank v. Ridgefield Farms, LLC, et al (Docket No. CV 07-5002320S).

6. **Term of Agreement:** This Agreement shall terminate upon the earliest of any one of the following events:

   a. November 16, 2007.

   b. Payment, in full, of the Debt.

   c. The return of any payment for insufficient funds.

   d. The filing of a foreclosure proceeding by any other person or governmental entity on the Property.

   e. The filing of bankruptcy, receivership or other insolvency proceeding relating to the Defendants' assets.

   f. The failure to make any Payment as required by Paragraph 3 above.

   g. The default or breach of the Defendants' agreement to pay as outlined herein.

7. **Default:** Upon termination of this Forbearance Agreement for any reason, the forbearance hereunder shall cease and Webster Bank shall be entitled to (a) retain amounts paid

3

by the Defendants pursuant to this Forbearance Agreement, giving the Defendants credit towards their obligations under this Forbearance Agreement, and all other agreements between the Parties; (b) pursue the Action or any other legal proceeding to collect amounts due; (c) an award of attorneys fees and all costs (including but not limited to court fees, marshal fees, appraisal fees and expert fees) incurred in securing this Forbearance Agreement and/or collecting amounts due from the Defendants pursuant to any other agreement or (d) exercise any rights under the law.

8. **Partial Payment:** Any amount paid by the Defendants which is less than the total amount due will be credited as a partial payment and shall be applied in accordance with the Loan Documents; however, partial payment(s) will not be accepted as a cure of any breach and/or default or as an accord and satisfaction under this or any loan document.

9. **Notice:** Webster Bank is under no obligation to notify the Defendants of the termination of this Forbearance Agreement or any default hereunder and the Borrower has no right to cure any default

10. **Enforcement:** If a court finds that any provision of this Forbearance Agreement is not valid or enforceable, such a finding will not disturb the validity of the remaining terms. The provision found to be unenforceable shall be deemed modified to eliminate such unenforceable obligation.

11. **Construction:** This Forbearance Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut, excluding any choice of law principles.

12. **Execution:** This Forbearance Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same integrated Forbearance Agreement.

STATE OF CONNECTICUT  )
                      )  ss. New Haven
COUNTY OF New Haven   )

Before me, the undersigned, this 22nd day of October, 2007, personally appeared Phillip Friend / Peter Alpert known to me to be the managing member of Ridgefield Farms, LLC and that, as such member, signer, and sealer of the foregoing Forbearance Agreement, acknowledged the execution of the same to be his/her free act and deed and the free act and deed of Ridgefield Farms, LLC. In Witness Whereof, I hereunto set my hand.

_____
Notary Public
My Commission Expires:
Commissioner of the Superior Court

STATE OF CONNECTICUT  )
                      )  ss. New Haven
COUNTY OF New Haven   )

Before me, the undersigned, this 22nd day of October, 2007, personally appeared Phillip Friend and that he, individually as such, signer and sealer of the foregoing Forbearance Agreement, acknowledged the execution of the same to be his free act and deed. In Witness Whereof, I hereunto set my hand.

_____
Notary Public
My Commission Expires:
Commissioner of the Superior Court

STATE OF CONNECTICUT  )
                      )  ss. New Haven
COUNTY OF NEW HAVEN   )

Before me, the undersigned, this 16th day of October, 2007, personally appeared Peter Alpert and that he, individually as such, signer and sealer of the foregoing Forbearance Agreement, acknowledged the execution of the same to be his free act and deed. In Witness Whereof, I hereunto set my hand.

_____
Notary Public
My Commission Expires:
Commissioner of the Superior Court

6